44630. EBERHART v. THE STATE.
(361 SE2d 821)

SMITH, Justice.

The appellant, Michael Dino Eberhart, was found guilty of the murder of his wife, Bettye Eberhart. We affirm.[1]

The appellant and the victim had been separated for approximately four months, and during that time he had either threatened or physically assaulted the victim in the presence of her daughter and another witness. The appellant was in the victim's home at approximately 5:30 p.m. on the night of the murder and he had an opportunity to unlock one of the new locks that the victim had placed on the doors. While there the appellant questioned the victim's daughter, Erica, and learned that she would be out of the house until midnight that night.

Erica arrived home a little after midnight, unlocked the front door, and entered the house. She noticed duct tape on the walls, items strewn around the house, and the bound feet of her mother's body. She called the police but when she heard a noise in the back of the house she ran to a neighbor's home. Mrs. Eberhart's body was half in and half out of a bathtub where her head had been held under water. She had suffered trauma to the face and body, and there was blood coming from her mouth and nose. The cause of death was asphyxia due to drowning and suffocation. There were no signs of a forced entry into the house.

The police interviewed the appellant at his home and asked him to go with them to the police station. Other witnesses were also asked to go to the police station. The appellant was given *Miranda* warnings, signed a waiver, and gave the police a statement in which he

---

[1] The murder occurred on March 3, 1985. The appellant was indicted during the July 1985 term, and tried by a DeKalb County jury beginning January 28, 1986 and found guilty and sentenced on February 1, 1986. His amended motion for new trial was overruled on March 20, 1987, and a notice of appeal was filed on March 26, 1987. The record was certified on April 22, 1987, docketed in this Court on May 4, 1987, and the case was argued on June 29, 1987.

denied any knowledge of the crime. Subsequently, he was placed under arrest and his clothing was seized.

The appellant testified in detail as to his whereabouts the night of the murder and maintained his innocence.

Type "O" blood (both the appellant and the victim had type "O" blood) was found in two places on the front and one place on the back of the appellant's pants. There was evidence that the appellant had stubbed his toe and there was some blood inside his shoe, but he did not know how the blood got on his pants. Ninety percent of the one hundred fibers removed from the duct tape that was found at the crime scene were red cotton and polyester that had the same microscopic characteristics of the red cotton and polyester pants the appellant was wearing the day of the murder. Forty-two fibers removed from the victim's clothing also had the same microscopic characteristics of the red cotton and polyester pants.

The jury found the appellant guilty of murder and they recommended life.

1. The appellant argues that the trial court erred in overruling his challenge to the array of the grand and traverse juries. He also maintains that the Jury Commission knowingly violated provisions of statutory and case law to the extent of violating the provisions required for jury selection.

a. The voter registration list which is the primary source contemplated by OCGA § 15-12-40 is an appropriate and approved source of potential jurors. As we noted in *Parks v. State*, 254 Ga. 403, 411 (330 SE2d 686) (1985), "[t]he voter list has the advantage that qualifications for voting and qualifications for jury service are nearly the same." See also *Cook v. State*, 255 Ga. 565, 574 (340 SE2d 891) (1986).

The proper analysis for determining racial disparity was set out in *Wright v. State*, 255 Ga. 109, 111 (335 SE2d 857) (1985). Using the *Wright* analysis we agree with the trial court that there was no under representation on either the traverse or grand jury.

b. The appellant did not produce any evidence showing that anyone who served on the grand jury was not qualified to do so. See *Dawson v. State*, 166 Ga. App. 515, 517 (304 SE2d 570) (1983). We find no error.

2. The appellant claims that the trial court erred in not finding that he was taken into custody in his home prior to probable cause being established, that he was not given *Miranda* warnings when he was first taken into custody, and in refusing to suppress the evidence obtained from his clothing.

The appellant was interviewed in his home by police officers, but he was not taken into custody or placed under arrest in his home. He agreed to go with the police to the police station. Other family mem-

bers were invited and taken to the police station to assist in the investigation. No statement was taken from the appellant or used against him during the trial that was made before he was advised of his *Miranda* rights and signed a waiver. There was no illegal arrest. This case is distinguishable from *Dunaway v. New York*, 442 U. S. 200 (99 SC 2248, 60 LE2d 824) (1979).

Once the appellant was lawfully arrested and in custody, the effects in his possession could be lawfully searched and seized without a warrant. *United States v. Edwards*, 415 U. S. 800 (94 SC 1234, 39 LE2d 771) (1974). See also *Cardwell v. Lewis*, 417 U. S. 583 (94 SC 2464, 41 LE2d 325) (1974).

3. The preliminary hearing was continued and later waived by the appellant. The grand jury found probable cause to indict the appellant; thus, we find no error. See *Wells v. Stynchcombe*, 231 Ga. 199, 201 (200 SE2d 745) (1973).

4. The appellant testified in detail as to his whereabouts the night of the murder. The prosecution's thorough cross-examination of the appellant regarding the critical hours of 10:30 p.m. until 1:00 a.m. (the only time during the night of the murder that he was not with friends) did not unconstitutionally shift the burden of proof to the appellant. We do not agree that the trial court erred in charging the jury on alibi without a request.

5. There was sufficient evidence under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), to allow a rational trier of fact to believe that the appellant was guilty of the murder.

6. Under *Witherspoon v. Illinois*, 391 U. S. 510 (88 SC 1770, 20 LE2d 776) (1968), the state was entitled to exclude the jurors who were opposed to the death penalty and exclusion of those jurors did not deny the appellant of impartial jurors. *Catchings v. State*, 256 Ga. 241, 243 (347 SE2d 572) (1986).

7. The jury imposed a life sentence, thus, we need not consider any issue related to a possible reverse *Witherspoon*, supra, error. *Moore v. State*, 254 Ga. 525, 529 (330 SE2d 717) (1985).

8. The appellant made no objection to the expert's testimony during trial, and we will not consider it for the first time on appeal.
*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 19, 1987.

*Peggy M. Childs, Mobley F. Childs,* for appellant.
*Robert E. Wilson, District Attorney, Elisabeth G. MacNamara, Assistant District Attorney, Michael J. Bowers, Attorney General,*

*Eddie Snelling, Jr., Assistant Attorney General,* for appellee.